**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Design Trend International Interiors, Ltd., an Arizona corporation,<br><br>Appellant,<br><br>vs.<br><br>Cathay Enterprises, Inc., an Arizona corporation,<br><br>Appellee. | No. CV-10-01079-PHX-NVW<br><br>**ORDER** |

Before the Court is Cathay's "Motion for Rehearing" (Doc. 32). For the reasons stated below, this motion is granted in part and denied in part, and the judgment will be vacated.

**I.　LEGAL STANDARD**

Cathay's motion for rehearing is effectively a motion to reconsider the March 29, 2011 Order. A motion to reconsider requires "a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1).

**II.　ISSUES THAT DO NOT MERIT RECONSIDERATION**

**A.　Election of Remedies**

Cathay principally argues against this Court's conclusion that Cathay elected to permit Design Trend to continue performing the contract. Design Trend made this election-of-remedies argument in its opening appeal brief: "The consequence of Cathay's

acceptance of Design Trend's performance under Arizona law is that Cathay waived any breach. It is fundamental that Cathay could not continue to accept Design Trend's performance and also refuse to make payment." (Design Trend Br. 23; Doc. 18 at 29.) Cathay argued in response, "There is substantial evidence supporting [the bankruptcy court's] finding that Cathay did not waive Design Trend's untimely performance." (Cathay Br. 21; Doc. 23 at 21.)

This Court recognized that "the bankruptcy court did not express any finding about waiver," but because "the parties argue as if it did" and

> because the bankruptcy court could not have ruled in favor of Cathay without rejecting Design Trend's waiver theory [*i.e.*, election of remedies], the Court will infer a no-waiver finding [*i.e.*, a finding that Cathay did not elect performance over damages] and review it accordingly. *See Vance v. Am. Hawaii Cruises, Inc.*, 789 F.2d 790, 792–93 (9th Cir. 1986) (reviewing court may imply findings that necessarily flow lower court's explicit findings); *Carr v. Yokohama Specie Bank, Ltd.*, 200 F.2d 251, 255 (9th Cir. 1953) ("Nor is it necessary that the trial court make findings asserting the negative of each issue of fact raised. It is sufficient if the special affirmative facts found by the court, construed as a whole, negat[e] each rejected contention.").

(Doc. 29 at 12–13.)

Cathay now argues that this Court could not legitimately reach this conclusion because Design Trend did not present an election-of-remedies argument until Design Trend appealed to this Court. Therefore, says Cathay, Design Trend waived the argument by not raising it first with the bankruptcy court.

This challenge lacks merit because Cathay, ironically, has waived it. Design Trend unequivocally raised an election-of-remedies argument in its opening appeal brief. If Cathay wanted to object that Design Trend had not raised that argument below, it should have done so in its response brief. Instead, it attacked the argument on its merits. This Court was therefore entitled to assume that Design Trend had presented an election-of-remedies argument below. If that assumption was erroneous, Cathay bears the blame and cannot now unravel the Court's analysis on this basis.

In any event, although the bankruptcy court did not express any finding regarding election of remedies, the issue permeates the record, including the bankruptcy court's conclusion: "[Design Trend] breached its amended construction contract with [Cathay] by not completing its work on the project timely per the schedule agreed to by the parties; and [Design Trend] did not complete its work within a reasonable period of time in any event." (Design Trend Tr. 260.) Mention of "reasonable period of time" is an element of the election-of-remedies principle. *See*, *e.g.*, Joseph M. Perillo, *Calamari and Perillo on Contracts* § 11.33 (6th ed. 2009) ("If . . . the owner allows the contractor to continue and the contractor subsequently finishes within a reasonable time from the time of the election, the owner must pay the price but is still entitled to damages for partial breach because of the late completion.").

In addition, the bankruptcy court's various statements about Design Trend's choice not to pursue an unjust enrichment claim show that the bankruptcy court understood the election-of-remedies consequences of its ruling. The bankruptcy court knew that it was excusing Cathay from payment for completed work because Design Trend delayed completion so long that it supposedly amounted to a material breach. Thus, the bankruptcy court knew that it was foreclosing Design Trend's normal route for getting paid — *i.e.*, as a matter of contract, Cathay having elected to permit Design Trend to finish the job — and leaving Design Trend to an equitable fallback. In short, whether or not Design Trend specifically raised an election-of-remedies argument below, the bankruptcy court understood and considered it. Accordingly, it was not error for this Court to review the argument.

**B.   Cathay Elected Performance**

Cathay not only challenges the appropriateness of reviewing the election-of-remedies argument, but also this Court's ultimate disposition. Cathay claims that

> [i]t is in the public interest for citizens to be able to go to the Registrar to compel a licensed contractor to correct work which fails to meet the minimum workmanship standards without fear of waving substantive legal rights. The Court's

> ruling would have a chilling effect on the use of the Registrar's enforcement mechanisms by treating recourse to the Registrar as an election of remedies.

(Doc. 32 at 8–9.)

Cathay's public policy concerns are misdirected. It has long been the public policy of Arizona contract law, and of Anglo-American contract law generally, that contracting parties get either the performance for which they contracted or damages. If a party gets performance but it comes late, the party can normally sue for damages foreseeably caused by the delay (although Cathay contracted away that right in this case). But the party cannot accept performance and refuse to pay for that performance.

Cathay's argument endangers these principles. Cathay would give property owners an incentive to look for workmanship violations and withhold payment while complaining to the Registrar. If the Registrar sustains those complaints, the property owner pays nothing more to the contractor, *even if the contractor fixes the workmanship violations*.

### C. "Within a Reasonable Time"

Cathay also challenges this Court's conclusion that the bankruptcy court clearly erred in concluding that Design Trend did not complete its work within a reasonable period of time from the time Cathay elected to permit performance. Cathay has offered no new argument or evidence here, and no reconsideration is warranted.

### D. Contract Price

Cathay next asks this Court to backtrack on its damages calculation because, Cathay argues, the contract price of $1,209,737.45 (as renegotiated in July 2001) cannot be established by collateral estoppel. Although two Registrar ALJs described the contract price as $1,209,737.45 in their "Findings of Fact," Cathay claims that these findings do not have collateral estoppel effect because the issue of contract price was not actually litigated.

Even if the Registrar proceedings did not establish the contract price, it would have been clear error for the bankruptcy judge to conclude that the renegotiated contract

price was anything other than $1,209,737.45. Cathay twice represented the $1,209,737.45 figure to the Registrar, the Registrar twice accepted that figure, and Cathay never sought to correct it. *Cf. Hawkins v. State*, 183 Ariz. 100, 104, 900 P.2d 1236, 1240 (Ct. App. 1995) ("Arizona case law also makes clear that the failure to seek judicial review of an administrative order precludes attacking the order by means of a separate complaint." (internal quotation marks omitted)). Further, several other exhibits admitted at trial confirm that Cathay knew that the contract price was $1,209,737.45. (*See*, *e.g.*, Doc. 45 at 38, 40, 48, 74 (statements by Cathay or its principal acknowledging that the parties modified the contract price to $1,209,737.45 in July 2001).)

Cathay nonetheless insists that $1,209,737.45 cannot possibly be the correct contract price because it does not add up correctly when one assumes a cost-plus-9% structure, which it believes it was promised. But the bankruptcy court correctly concluded that Cathay's contract with Design Trend was a fixed price contract, not a cost-plus contract. This obsession with obtaining the right markup, irrespective of the final price, is baffling. Cathay was not misled as to the final price it would be required to pay. Cathay seems to acknowledge this, but also appears to insist that it did not get the benefit of its bargain unless the final price equals cost-plus-9%. Again, however, Cathay did not bargain for cost-plus-9%. Although Design Trend may have used that as a method of calculating the fixed price, nothing in Cathay's contracts with Design Trend mention a cost-plus structure, much less guarantee that the fixed price would equal cost-plus-9%.

### E. Affirmative Defenses

Cathay argues that the bankruptcy court's ruling obviated the need to address its affirmative defenses of mistake and unconscionability. Given that this Court has reversed the bankruptcy court, Cathay requests an opportunity to argue those affirmative defenses.

The affirmative defenses Cathay relies on are mistake and unconscionability. (Doc. 32 at 15–16.) These "defenses" simply restate Cathay's untenable cost-plus theory. (*See* Cathay Enterprises Inc.'s Post-Trial Memorandum, No. 2:04-ap-01085-RTB (Bankr.

- 5 -

D. Ariz.), Doc. 114 at 13–16.) Accordingly, there is no need for further proceedings regarding Cathay's mistake and unconscionability defenses.

### F. Offsets for Subcontractor Payments

Cathay claims it still deserves "offsets for several subcontractors which Cathay had to pay because Design Trend refused." (Doc. 57 at 9.) The Court already awarded a $36,199.58 offset (*see* Doc. 29 at 15:14–20) — which was the total offset Cathay asked for from the bankruptcy court, at least with respect to payments made to Design Trend's subcontractors (*see* Cathay Enterprises Inc.'s Post-Trial Memorandum, No. 2:04-ap-01085-RTB (Bankr. D. Ariz.), Doc. 114 at 7). Cathay therefore has nothing more to claim in terms of payments it made to subcontractors.

## III. ISSUES THAT MAY MERIT RECONSIDERATION

### A. "Items that Were Never Provided to Cathay"

Cathay claims that Design Trend did not provide certain items that it had promised to provide, including headboards, toasters, end tables, vanity lights, and various other items. Cathay bought these items itself for $20,801.65. (Doc. 57 at 15–16.) Cathay claims this amount as an offset. The briefs currently before the Court do not suffice to resolve this issue. Additional findings and conclusions are therefore necessary.

### B. Sales Tax

This Court awarded Design Trend principal damages of $184,830.07 — the amount Cathay had yet to pay on its reduced obligation of $1,209,737.45, minus certain offsets. The Court also concluded that Cathay is responsible for sales tax on that amount at 4.875%, for a total of $9,010.47. Cathay argues that this award of sales tax allows Design Trend to have its cake and eat it too. If the parties originally agreed to a fixed price of $1,277,000 *inclusive* of sales tax (as Design Trend claims), then why is the reduced fixed price of $1,209,737.45 *exclusive* of sales tax? To this, Design Trend responds,

> The revised budget clearly shows that the $1.209 million figure only included sales tax through April 2001. . . . [T]he revised contract price of $1.209 million was conditioned on

> [Cathay] securing the tax waiver for the balance of the reduced tax yet to be paid. If [it] failed to obtain the waiver, [it] had to pay that additional sales tax as would any other customer.

(Doc. 44 at 15.) That contention is not clearly established by the record. Accordingly, additional findings of fact are necessary to determine whether Cathay is liable for the $9,010.47 in sales tax.[1]

### C. Procedure for Reconsideration

Cathay's motion for reconsideration will be granted as to the $20,801.65 in items Cathay allegedly had to buy when Design Trend did not supply them, and the $9,010.47 in sales tax. The Court will withdraw the bankruptcy court reference, *see* 28 U.S.C. § 157(d), and hear oral argument on these two issues. Oral argument should address both the merits of these issues as well as whether Design Trend would simply prefer to conclude these proceedings by permitting the Court to reduce the judgment by $29,812.12.

If oral argument is not sufficient to resolve these issues, the Court will establish a briefing schedule, with the goal of additional findings and conclusions, but based solely on testimony and exhibits admitted at trial.[2] This procedure will speed up the resolution of this dispute which has now been in litigation for ten years.

IT IS THEREFORE ORDERED that Cathay's "Motion for Rehearing" (Doc. 32) is GRANTED with respect to items Cathay allegedly had to buy when Design Trend did not supply them, and with respect to sales tax, and otherwise DENIED.

---

[1] If Design Trend's tax-waiver argument is correct, Design Trend would theoretically be entitled to more sales tax. Cathay paid Design Trend $200,000 after April 2001. This $200,000 was therefore exclusive of sales tax. However, when the Court calculated sales tax, it assumed that Cathay did not owe any tax on that $200,000 payment. Had the Court been informed otherwise, the amount would have increased to $18,760.47 ($384,830.07 * 0.04875). But Design Trend has not advanced this argument here, and the Court deems it waived.

[2] The Court has conferred with Judge Baum, and he agrees to this procedure.

1    IT IS FURTHER ORDERED that the Judgment (Doc. 30) is VACATED.

2    IT IS FURTHER ORDERED that the reference to the bankruptcy court of case number 2:04-ap-01085-RTB is WITHDRAWN pursuant to 28 U.S.C. § 157(d) for purposes of making additional findings of fact and conclusions of law.

    IT IS FURTHER ORDERED that the parties shall appear for oral argument on Thursday, November 3, 2011, at 10:00 a.m., at the Sandra Day O'Connor U.S. Courthouse, Courtroom 504, 401 W. Washington Street, Phoenix, Arizona.

    Dated this 5th day of October, 2011.

    _____
    Neil V. Wake
    United States District Judge