**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Design Trend International Interiors, Ltd., an Arizona corporation,<br><br>       Appellant,<br><br>vs.<br><br>Cathay Enterprises, Inc., an Arizona corporation,<br><br>       Appellee. | No. CV 10-01079-PHX-NVW<br><br>**ORDER** |

Before the Court are (1) the parties' briefs in response to Cathay's motion to reconsider (Docs. 79, 84, 86; *see also* Docs. 32, 44, 57, 69, 74, 76); (2) "Appellant's Motion to Amend Judgment" (Doc. 31); and (3) Design Trend's "Motion for Award of Attorneys' Fees and Costs" (Doc. 46). For the reasons stated below the Court will enter a revised judgment *nunc pro tunc*, effective March 29, 2011, for the principal sum of $169,025.22, and Design Trend's motions for prejudgment interest and attorneys fees will be granted.

**I.      FINDINGS & CONCLUSIONS**

Having withdrawn the reference to the bankruptcy court and having considered the evidence and arguments submitted in connection with these proceedings, the Court finds and concludes as follows:

**A.     Contract and Performance**

1. On March 14, 2001, Design Trend International Interiors. Ltd. (Design Trend) agreed with Cathay Enterprises, Inc. (Cathay) to remodel Cathay's hotel for a fixed price of $1,277,000, inclusive of sales tax. (Doc. 15-3 at 3, 9, 22.)

2. In July 2001, Design Trend and Cathay agreed to narrow the scope of Design Trend's work and reduce the fixed price of their contract to $1,209,737.45. (Doc. 15-2 at 56, 83; Doc. 45 at 38, 40, 48, 74; Doc. 79-4 at 13.)

3. As of late July 2001, Cathay's payments to Design Trend totaled $986,707.80. Cathay has since made no further payments to Design Trend. (Undisputed.)

4. Under the contract as modified in July 2001, the parties expected Design Trend to complete its work by August 31, 2001. (Doc. 15-6 at 2.)

5. Through two Arizona Registrar of Contractors ("Registrar") proceedings filed by Cathay against Design Trend, it was established by decision dated June 5, 2003 that Design Trend had not completed its work for Cathay by August 31, 2001, but had substantially completed its work by mid-February 2003. (Doc. 15-2 at 19–28, 30–36.)

6. As of June 5, 2003, Cathay became obligated to pay all amounts yet owing to Design Trend. (Doc. 15-2 at 30–36.)

7. By complaining to the Registrar against Design Trend, insisting that Design Trend complete its work, and accepting such additional work as the Registrar ordered, Cathay waived any claim that Design Trend's delay in performance excuses Cathay from paying Design Trend for such performance. (Doc. 29 at 11–14.)

**B.     Sundry Offsets**

8. The $1,209,737.45 reduced contract price was intended to include $14,201.19 in furniture, fixtures, and equipment (namely: headboards, toasters, end tables, vanity lights, and dressing mirrors) and Design Trend never provided those items. (Doc. 79-2 at 19–68; Doc. 79-4 at 13–23.) Based on a review of the joint pretrial statement, the Court finds that Cathay adequately preserved this claim for trial. (Doc. 79-

1 at 86 ¶ 15.) Cathay is therefore entitled to a $14,201.19 offset for furniture, fixtures, and equipment.

9. Cathay claims that it was required to purchase $1,603.66 in roofing materials to repair damage done by Design Trend. Design Trend concedes this assertion. (*See* Doc. 84 at 4 n.2.) Cathay is therefore entitled to a $1,603.66 offset for roofing materials.

10. Cathay claims that it was forced to pay $36,199.58 to certain other contractors to fix or complete some of Design Trend's work. Design Trend concedes that Cathay is entitled to some offset in this regard and has agreed not to contest the requested amount. (*See* Doc. 29 at 15.) Cathay is therefore entitled to a $36,199.58 offset for amounts it paid to other contractors for work that Design Trend should have done.

11. Cathay also claims that is was forced to spend an unspecified amount to fix certain "punch list" items that were Design Trend's responsibility. Design Trend concedes that Cathay is entitled to a $2,000 offset in this regard. (*See* Doc. 29 at 15.) Cathay is therefore entitled to a $2,000.00 offset for amounts it paid to fix punch list items that Design Trend should have fixed.

12. Cathay claims that it incurred $4,496.80 in extra costs for cleanup, repairs, and phone calls that Design Trend should have paid for. Based on a review of the joint pretrial statement, the Court finds that Cathay did not adequately preserve this claim for trial. (Doc. 79-1 at 67–90.) Cathay therefore is not entitled to an offset for these amounts.

13. Cathay claims that it paid for and received from Design Trend certain tables, worth about $500, but those tables went missing. Cathay claims an offset of $500 because the $1,209,737.45 reduced contract price included two $48.06 line items for "protection of FF&E [furniture, fixtures, and equipment]" (Doc. 79-4 at 16, 17), which Cathay interprets as some sort of security fee or insurance premium related to loss or theft. Based on the value of these "protection of FF&E" line items and the nature of this project, the Court concludes that "protection of FF&E" does not refer to security or

insurance. It likely refers to protection from paint and dust, but the Court need not conclude as much. It suffices to note that "protection of FF&E" does not refer to security or insurance. Cathay therefore is not entitled to an offset for the lost tables.

### C. "Phase V" Electrical Work

14. The $1,209,737.45 reduced contract price included a line item for electrical work described as "[f]urnish[ing] and install[ing] new circuits at wet locations per plans" in twenty-two Type "C" guestrooms, at a cost of $1,458 per room, for a total of $32,076. (Doc. 79-4 at 17.)

15. The $1,458 cost per Type "C" guestroom reflected a reduction in scope from full electrical work to rough-in only (*i.e.*, running wire and installing related hardware, but not making it functional). (Doc. 79-4 at 39–41, 47–48.)

16. The electrical work on Type "C" guestrooms, located on the south side of Cathay's hotel, comprised "Phase V" of the remodeling project. (Doc. 79-4 at 9, 25, 30–32.)

17. In both Registrar complaints filed by Cathay against Design Trend (*see* ¶ 5, above) Cathay alleged that "Phase V was never touched." (Doc. 15-2 at 56, 83.) Cathay's first Registrar of Contractors complaint attached two lists of allegedly unfinished work (designated "List A" and "List B"), and stated at item 10 of List A: "Electrical wire was not run in the South side building" (referring to Phase V electrical work). (Doc. 15-2 at 57.)

18. A Registrar inspector performed an on-site inspection based on Lists A and B and ordered Design Trend to address various items on those lists, but did not order Design Trend to correct List A, item 10, regarding the Phase V electrical work. (Doc. 15-2 at 20–21.)

19. Following the Registrar inspector's order, Design Trend completed at least some of the work required by the inspector. (Doc. 15-2 at 21–22.)

20. At a Registrar hearing following Design Trend's additional work, Cathay testified regarding the items from List A that it believed were still uncompleted. Cathay did not mention the Phase V electrical work. (Doc. 15-2 at 22–23.)

21. Cathay's second Registrar complaint against Design Trend also did not mention Phase V electrical work. (Doc. 15-2 at 83–90.)

22. Cathay fully and fairly litigated the electrical work issue through Registrar proceedings and lost, and is now collaterally estopped from re-raising the issue here. (*See* Doc. 29 at 8–9 (citing authority regarding collateral estoppel effect of Registrar proceedings).) Moreover, viewing the matter *de novo* on the evidence of record, the Court independently finds that Cathay has not proved and is not entitled Phase V offsets.

### D. Sales Tax

23. The $1,209,737.45 reduced contract price, like the original contract price, was inclusive of sales tax. (Doc. 79-4 at 13; Doc. 79-6 at 20.)

24. Although Design Trend claims that the $1,209,737.45 reduced contract price was conditioned on Cathay receiving a sales tax waiver, Design Trend's argument is based on its own purported summary of certain trial testimony which it does not attach. (Doc. 84 at 8–9.) Accordingly, Design Trend's argument fails for lack of evidence. Cathay is not required to pay sales tax on the remaining amounts it owes.

### E. Damages Calculation

25. Design Trend's principal damages are as follows:

```
$   1,209,737.45   Reduced Contract Amount (¶ 2)
$    (986,707.80)  Sums Previously Paid by Cathay (¶ 3)
$     (14,201.19)  Furniture, Fixtures, and Equipment (¶ 8)
$      (1,603.66)  Roofing Materials (¶ 9)
$     (36,199.58)  Other Contractors (¶ 10)
$      (2,000.00)  Punch List Items (¶ 11)
```
---
**$     169,025.22   TOTAL**

## II. DESIGN TREND'S MOTION TO AMEND JUDGMENT

Design Trend's motion to amend the judgment requests prejudgment interest on the principal award, excluding sales tax. Whether Design Trend merits prejudgment interest turns on the questions discussed below.

### A. State vs. Federal Law

Cathay argues that 11 U.S.C. § 726(a)(5) — specifying that the fifth priority in distributing property of the bankruptcy estate is "payment of interest at the legal rate from the date of the filing of the petition" — means that (i) interest started to accrue when Cathay filed for bankruptcy (September 7, 2004), and not before; and (ii) "the legal rate" means the federal judgment rate found in 28 U.S.C. § 1961.

Section 726 does not apply to this case. Section 726 governs Chapter 7 (liquidation) cases. Cathay filed under Chapter 11 (reorganization). A review of the bankruptcy docket shows that the trustee moved to convert the case to Chapter 7 on multiple occasions, but all of those motions were withdrawn or denied. The docket indicates that Cathay's case remains in Chapter 11.

The Court could locate no provision from Chapter 11 governing interest on preexisting claims. The Court assumes this is because Chapter 11 relies on the formulation of a court-approved plan, and such plans could address interest in many ways depending on the circumstances of the estate in bankruptcy. *See generally* 11 U.S.C. §§ 1121–29.

This case is equivalent to a diversity case removed to federal court. As such, the Court applies the law of state governing the contract, which is Arizona law. *See In re Banks*, 225 B.R. 738, 750 (Bankr. C.D. Cal. 1998) ("The removed [adversary proceeding] is equivalent to a diversity action, as it is not brought under any aspect of federal law and is in this court only due to its relationship to the [core] bankruptcy. In diversity cases, state law governs the award of pre-judgment interest."). The Court will therefore award interest according to Arizona state law.

### B.   Whether Design Trend's Claim Was Liquidated

In Arizona, "[p]rejudgment interest is awarded as a matter of right on a liquidated claim." *John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, 544, 96 P.3d 530, 542 (Ct. App. 2004). Liquidated claims are those for which "'the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion.'" *Id*. (quoting Charles T. McCormick, *Handbook on the Law of Damages* § 54, at 213 (1935)) (emphasis removed). Unliquidated claims are those for which "'the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed.'" *Id*. "A claim is not considered unliquidated merely because the [trier of fact] must find certain facts in favor of the [claimant] in order to determine the amount of damages. All that is necessary is that the evidence furnish data which, *if believed*, makes it possible to compute the amount with exactness." *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 153 Ariz. 95, 109, 735 P.2d 125, 139 (Ct. App. 1986) (emphasis in original). The fact that a claim is subject to offsets does not make it unliquidated. *Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc.*, 124 Ariz. 242, 265–67, 603 P.2d 513, 536–38 (Ct. App. 1979).

In modern practice, few claims fall into the unliquidated category. Punitive damages, attorneys fees, and benefit-of-the-bargain damages (for fraud) are considered unliquidated. *Alta Vista Plaza, Ltd. v. Insulation Specialists Co., Inc.*, 186 Ariz. 81, 82–83, 919 P.2d 176, 177–78 (Ct. App. 1995). Most other sorts of claims have come to be considered liquidated. *See* 1 Dan B. Dobbs, *Law of Remedies* § 3.6(2), at 340 (2d ed. 1993) ("as courts have come to accept interest as necessary for full compensation they have expanded the concept of [liquidated damages]").

In this case, Design Trend's claim was liquidated. Cathay knew that the reduced contract price was $1,209,737.45 and that it had paid only $986,707.80. It also knew

- 7 -

with certainty as of the second ALJ decision (June 5, 2003) that Design Trend had completed its work and payment was due, subject to certain offsets. This "data . . . makes it possible to compute the amount [owed] with exactness." *Trus Joist*, 153 Ariz. at 109, 735 P.2d at 139.

Cathay nonetheless protests that its contract with Design Trend did not require a final payment until an architect issued a certificate of completion. To this day, Design Trend has not obtained a certificate of completion, and therefore, Cathay argues, it was never under an obligation to pay until this Court entered judgment on March 29, 2011. But Cathay's position all along is that Design Trend never completed the project. In any event, the Court is satisfied that the Registrar's June 5, 2003 ruling, preceded by two Registrar inspections (*see* Doc. 29 at 4–5), is the substantial equivalent of an architect's certificate of completion. Accordingly, Cathay became obligated at least as of June 5, 2003.

### C. Whether Design Trend Made a Demand

The date on which a sum became liquidated is not necessarily the date from which interest accrues. Rather,

> [p]rejudgment interest on a liquidated claim accrues from the date of demand of a sum certain. . . . Furthermore, prejudgment interest will not accrue until the claimant provides sufficient information and supporting data to allow the debtor to determine the amount owed. Consequently, a demand for a lump sum payment without an itemization is insufficient.

*Scottsdale Ins. Co. v. Cendejas*, 220 Ariz. 281, 289, 205 P.3d 1128, 1136 (Ct. App. 2009) (citations and internal quotation marks omitted); *see also Alta Vista Plaza*, 186 Ariz. at 83, 919 P.2d at 178; *Rawlings v. Apodaca*, 151 Ariz. 180, 186, 726 P.2d 596, 602 (Ct. App. 1985), *vacated in part on other grounds*, 151 Ariz. 149, 726 P.2d 565 (1986). All of these decisions involve insufficient demands before filing suit, and all concluded that, in such a circumstance, prejudgment interest accrues from the date the claimant filed its

complaint. *Id.* (as to all citations). None of these cases addresses the question of when interest begins to accrue for a claim that becomes liquidated *after* filing suit.

On this record, Design Trend never made an itemized demand on Cathay. Therefore, the earliest date on which interest could begin accruing is May 8, 2002, the date on which Design Trend filed its "complaint" (really a counterclaim) in state court. Nonetheless, the claim did not become liquidated until June 5, 2003. Prejudgment interest will be calculated from that date.

### D.  Interest Rate

Until last year, the prejudgment interest in Arizona was provided for as follows: "Interest on any loan, indebtedness, judgment or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to." A.R.S. § 44-1201(A) (2003 & Supp. 2010). On April 13, 2011, the Governor signed into law the following amendment to that provision (~~strikeout~~ shows deletions, underline shows additions):

> A. Interest on any loan, indebtedness~~, judgment~~ or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to. <u>Interest on any judgment that is based on a written agreement evidencing a loan, indebtedness or obligation that bears a rate of interest not in excess of the maximum permitted by law shall be at the rate of interest provided in the agreement and shall be specified in the judgment.</u>
>
> <u>B. Unless specifically provided for in statute or a different rate is contracted for in writing, interest on any judgment shall be at the lesser of ten per cent per annum or at a rate per annum that is equal to one per cent plus the prime rate as published by the board of governors of the federal reserve system in statistical release H.15 or any publication that may supersede it on the date that the judgment is entered. The judgment shall state the applicable interest rate and it shall not change after it is entered.</u>

2011 Ariz. Sess. Laws., ch. 99 § 15. Under this new law, judgments no longer accrue interest at ten percent unless the presumptive interest rate of prime-plus-one-percent happens to exceed ten percent, which is not the case here.

This amendment raises an unusual issue in this case. The Court originally entered judgment on March 29, 2011 (Doc. 30) — before the amendment took effect — without any mention of prejudgment interest due to uncertainty in that regard. Design Trend then moved — also before the statutory amendment took effect — to amend the judgment to include prejudgment interest. Without resolving that motion, however, the Court vacated the judgment to reconsider certain issues that were not previously raised and the relevance of which could not have been reasonably foreseen given the posture of the case leading up to the March 29, 2011 judgment. After reconsideration, the Court has concluded that Design Trend is entitled to a somewhat smaller amount, but given the intervening statutory change, the Court will enter the judgment *nunc pro tunc*, retroactive to March 29, 2011. The revised judgment embodies what the original judgment should have been had the parties and the Court been able to foresee the issues resolved here. Accordingly, interest will be awarded at ten percent per annum.

### III. DESIGN TREND'S MOTION FOR ATTORNEYS FEES

Design Trend filed its motion for attorneys fees in response to the since-vacated March 29, 2011 judgment. In other words, Design Trend filed its motion before incurring fees in these reconsideration proceedings. Because Cathay established the merit of some of the offsets it sought upon reconsideration (certain FF&E and sales tax), the Court concludes that — although Design Trend is still the "successful party" in a "contested action arising out of a contract," A.R.S. § 12-341.01 — additional attorneys fees to Design Trend for reconsideration proceedings are not warranted. For clarity, Cathay's success in reconsideration proceedings does *not* make it, to that extent, a "successful party" in a "contested action arising out of a contract."

Having reviewed Design Trend's fees motion, the Court finds that Design Trend is entitled to such fees, and that the fees incurred are reasonable. The Court will award the requested amount of $382,966.44 in fees and $10,203.93 in taxable costs.

IT IS THEREFORE ORDERED that "Appellant's Motion to Amend Judgment" (Doc. 31) and Design Trend's "Motion for Award of Attorneys' Fees and Costs" (Doc. 46) are GRANTED.

IT IS FURTHER ORDERED that the final decision of the bankruptcy court is REVERSED.

IT IS FURTHER ORDERED that the portion of this Court's February 15, 2012 order (Doc. 87) requiring supplemental briefing on attorneys' fees is VACATED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment *nunc pro tunc* effective March 29, 2011, in favor of Design Trend and against Cathay, for: (1) the principal sum of $169,025.22, with prejudgment interest at 10 percent per annum from June 5, 2003 to March 28, 2011, and post judgment interest at the federal judgment rate (as of March 29, 2011) of 0.26 percent from March 29, 2011 until paid; (2) attorneys fees in the amount of $382,966.44; and (3) taxable costs and the amount of $10,203.93. The Clerk shall terminate this case.

Dated this 6th day of March, 2012.

_____
Neil V. Wake
United States District Judge